UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JEMEL MAYWEATHER,                )
                                 )
            Plaintiff            )
                                 )
        v.                       )    Case No. 2:09 cv 58
                                 )
LOCAL 743 UNION,                 )
                                 )
            Defendant            )

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 33] filed by the defendant, International Brother-
hood of Teamsters Local 743, on June 4, 2010.  For the following
reasons, the motion is GRANTED.

Background

The plaintiff, Jemel Mayweather, filed a charge of discrimi-
nation with the EEOC on March 13, 2009, against the International
Brotherhood of Teamsters, Local 743.  In his EEOC charge, May-
weather checked the box indicating that he was discriminated
against in violation of the Americans with Disabilities Act and
further explained that his charge was brought pursuant to the
misconduct and misrepresentation by Local 743, breach of the
union contract, and breach of the medical contract.

The essence of Mayweather's claim is that he was terminated
from his employment with Munster Med Inn without just cause, and

when he filed a grievance with Local 743, he was not fairly represented. Mayweather asserts that Munster Med Inn and Local 743 believed that he had a mental health condition and needed counseling. A union representative, Alfredo Gomez, stated that Mayweather was "mental," "unfit to work," and questioned other employees about Mayweather's mental health. Mayweather was instructed to take a leave and attend counseling or his employment would be terminated. Mayweather never received counseling and was terminated from his employment with Munster Med Inn on May 7, 2008.

Mayweather filed a grievance to return to work from his leave, but he was unsuccessful. Neither Munster Med Inn or Local 743 would return his phone calls or address his grievance, and both refused to take the matter to arbitration despite having arbitrated grievances filed by white women. Mayweather asserts that Local 743 failed to handle his grievance as provided for in the union contract.

The EEOC investigated Mayweather's charge and determined that the conduct of Munster Med Inn and Local 743 did not give rise to a claim. The EEOC issued a right to sue letter and Mayweather filed his pro se complaint in this court on March 13, 2009. Local 743 now moves for summary judgment.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at 786.  A fact is material if it is outcome determinative under applicable law.  There must be evidence on which the jury could reasonably find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjec-tive feelings play dominant roles.  Ashman v. Barrows, 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evalu-ate the weight of the evidence, judge the credibility of wit-

nesses, or determine the ultimate truth of the matter; rather,
the court will determine whether there exists a genuine issue of
triable fact.  Wheeler, 539 F.3d at 634 (citing Anderson, 477
U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court
must determine whether the evidence presented by the party
opposed to the summary judgment is such that a reasonable jury
might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,
149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000)
(setting out the standard for a directed verdict); Celotex Corp.,
477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786;
Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008)
(stating that a genuine issue is one on which a reasonable fact
finder could find for the nonmoving party); Springer v. Durfling-

er, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

"As a pro se litigant, [a] [p]laintiff is permitted a more lenient standard with respect to her pleadings than that imposed on a practicing attorney." Cintron v. St. Gobain Abbrassives, Inc., 2004 WL 3142556, *1 (S.D. Ind. Nov. 18, 2004). Although the court recognizes that pro se litigants face special challenges that litigants represented by counsel do not, pro se litigants are not excused from following procedural rules, and the substantive law will not be ignored because of the plaintiff's pro se status. Lee v. Wal-Mart Stores, 1994 WL 899240, *1 (N.D. Ind. Apr. 12, 1994); Cintron, 2004 WL 3142556 at *1

A defendant filing a motion for summary judgment must warn a pro se plaintiff of the consequences of failing to respond to the motion. Timms v. Frank, 953 F.2d 281, 285 (7th Cir. 1992). The notice must include a short statement informing the plaintiff that all factual assertions made by the defendant will be taken as true should the plaintiff fail to respond and include a copy of Rule 56. Id. Local 743 failed to send Mayweather the requisite notice when it filed its motion for summary judgment. The court issued notice on January 3, 2011, allowing Mayweather an

additional 21 days to supplement his response with supporting evidence.  The case is now ripe for decision.

Mayweather's EEOC charge clearly asserted a violation of the Americans with Disabilities Act and of Local 743's duty of fair representation.  In light of Mayweather's explanation that the union and Munster Med Inn arbitrated grievances filed by white women, Mayweather's complaint, if liberally construed, also may be read to assert a claim for race or gender discrimination.  The court will address these allegations in turn.

The Americans with Disabilities Act ("ADA") prohibits discrimination against an individual based upon such person's disability.  42 U.S.C. §12112(a).  An individual claiming protection must show that he is "disabled."  42 U.S.C. §12112(a).  An individual is disabled within the meaning of the ADA when he suffers a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment.  29 C.F.R. §1630.2.  Major life activities include activities that a person generally does on a daily basis, including, but not limited to, "walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §1630.2(i).  The court must make an individualized analysis to determine whether an individual's impairments

"substantially limit" his "major life activities."  E.E.O.C. v.
Lee's Log Cabin, Inc., 546 F.3d 438, 442 (7th Cir. 2008).

The "regarded as" prong of the ADA's definition of disabil-
ity addresses impairments that are not in fact disabling, but
believed to be so.  Krocka v. City of Chicago, 203 F.3d 507, 513-
14 (7th Cir. 2000); Brunker v. Schwan's Home Service, Inc., 583
F.3d 1004, 1008 (7th Cir. 2009) ("Under a 'regarded as' theory,
the plaintiff must demonstrate either that (1) the employer
mistakenly believes that the employee has an impairment that
substantially limits a major life activity, or (2) the employer
mistakenly believes that an existing impairment, which is not
actually limiting, does substantially limit a major life activ-
ity").  "The Supreme Court has noted that in order to make out a
claim under the 'regarded as' prong, 'it is necessary that a
covered entity entertain misperceptions about the individual.'"
Sutton v. United Airlines, Inc., 527 U.S. 471, 489, 119 S.Ct.
2139, 2150, 144 L.Ed.2d 450 (1999).  These misperceptions may
take the form of believing "either that one has a substantially
limiting impairment that one does not have or that one has a
substantially limiting impairment, when, in fact, the impairment
is not so limiting." Krocka, 203 F.3d at 514.

After a plaintiff establishes that he is disabled or re-
garded as such, he then must show that he is qualified for the

position in question.  Hoffman v. Caterpillar, Inc., 256 F.3d
568, 572 (7th Cir. 2001).  A qualified person with a disability
is someone who (1) has a disability but still satisfies the
requisite skill, experience, education, and other job-related
requirements of his employment position, and (2) can perform the
essential functions of the position held or desired, with or
without reasonable accommodation. 29 C.F.R. §1630.2(m); Budde v.
Kane County Forest Preserve, 597 F.3d 860, 862 (7th Cir. 2010).
Consideration is given to the employer's judgment as to what
functions of the job are essential.  42 U.S.C. §12111(8); Jackson
v. City of Chicago, 414 F.3d 806, 811 (7th Cir. 2005).  When an
employee is unable to perform the essential functions of employ-
ment, the court must consider whether any reasonable accommoda-
tion for the disabled employee would help him perform the job.
Amadio v. Ford Motor Company, 238 F.3d 919, 928 (7th Cir. 2001).
See 42 U.S.C. §12112(b)(5)(A) (requiring the employer to make
reasonable accommodations).  See also 42 U.S.C. §12111(9) (defin-
ing "reasonable accommodation").  If any accommodation would
place an "undue hardship" on the employer's business, the em-
ployer is not required to make the accommodation.  Amadio, 238
F.3d at 928.  See 42 U.S.C. §12112(b)(5)(A) (providing that the
employer does not have to undertake accommodations that create an
undue hardship).  See also 42 U.S.C. §12111(10) (defining undue

8

hardship).  In other words, an "unqualified" individual would be someone who could not do the job no matter what reasonable accommodations the employer made for that employee.  Filar v. Board of Education of City of Chicago, 526 F.3d 1054, 1067 (7th Cir. 2008).

"Once a plaintiff has established that she is a qualified individual with a disability, she may show discrimination in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate."  Hoffman, 256 F.3d at 572 (citing Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1021-22 (7th Cir. 1997)).  In disparate treatment claims, the plaintiff may prove that he was treated differently than other workers on the basis of a protected characteristic either with direct evidence or indirectly using the McDonnell Douglas burden-shifting method.  Hoffman, 256 F.3d at 572 (citing McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).  "In order to prevail in the absence of direct evidence, a plaintiff must first make out a prima facie case by showing that: (1) she is disabled within the meaning of the ADA; (2) she was meeting the legitimate employment expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment."  Hoffman, 256 F.3d at 572.

In failure to accommodate cases, in addition to showing that he is a qualified disabled individual, the plaintiff must show that the employer was aware of his disability and failed to accommodate it. Ekstrand v. School District of Somerset, 583 F.3d 972, 975 (7th Cir. 2009); King v. City of Madison, 550 F.3d 598, 600 (7th Cir. 2008). Reasonable accommodations may include:

> (A) making existing facilities used by em-
> ployees readily accessible to and usable
> by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified
> work schedules, reassignment to a vacant
> position, acquisition or modification of
> equipment or devices, appropriate ad-
> justment or modifications of examina-
> tions, training materials or policies,
> the provision of qualified readers or
> interpreters, and other similar accommo-
> dations for individuals with disabili-
> ties.
>
> 42 U.S.C. §12111(9)

Disabled employees must make their employers aware of any nonob-
vious, medically necessary accommodations with corroborating
evidence such as a doctor's note or orally relaying a statement
from a doctor, before the employer may be required under the
ADA's standard of reasonableness to provide a specific modest
accommodation to that employee. Elkstrand, 583 F.3d at 976. When
analyzing whether the employer provided reasonable accommoda-
tions, the court takes into consideration the communications
exchanged between the parties and looks at who was responsible

for the breakdown that occurred in any communications that involved accommodating the plaintiff's disability. Elkstrand, 583 F.3d at 975-76. When there is a communication breakdown, the court must "isolate the cause of the breakdown and then assign responsibility." Elkstrand, 583 F.3d at 976.

Local 743 argues that Mayweather cannot make out a prima facie case because there is a lack of evidence suggesting that the union regarded Mayweather as disabled, the plaintiff has not offered proof that he was qualified to perform the essential functions of the job in question, and there is no evidence that similarly situated employees received more favorable treatment.

An employee is regarded as having a disability when he:

    (1)   has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation;

    (2)   has a physical or mental impairment that substantially limits major life activities only as a result of an employer's attitude towards the impairment; and

    (3)   has none of the impairments defined in paragraph (o)(1) or (2) of this section, but is treated by an employer as having such an impairment.

41 C.F.R. §60-741.2

Mayweather does not argue that he has a mental or physical impairment. Therefore, it must be determined whether Local 743

treated him as having an impairment as defined under the ADA.[1]
The mental impairments that are considered disabling by the ADA
include: "Any mental or psychological disorder, such as mental
retardation, organic brain syndrome, emotional or mental illness,
and specific learning disabilities."  41 C.F.R. §60-741.2(o)(1)-
(2).

     As proof that he was regarded as disabled, Mayweather sub-
mits that Gomez, a union representative with Local 743, stated
that Mayweather was "mental, unfit to work, and asked a co-worker
about [Mayweather's] state of mind." (DE 35 p. 3)  Mayweather
also claims that he was threatened that his job would be termi-
nated unless he received mental health counseling.  However,
Gomez's vague statement and order for Mayweather to receive
treatment do not give rise to a triable issue of material fact.
In Stewart v. County of Brown, 86 F.3d 107, 111 (7th Cir. 1996),
the plaintiff complained that his employer regarded him as having
a mental disability because his supervisor said he was "excit-
able," stated to third parties that he considered the plaintiff
to be emotionally or psychologically imbalanced, and ordered him
to receive a number of psychological evaluations.  However, the
court reasoned that the statements and psychological evaluations

---

[1]The ADA applies to "covered entities" which it defines as "an employer,
employment agency, labor organization, or joint labor-management committee."
42 U.S.C. §12111(2).  Local 743 does not deny that it is a "covered entity."

alone did not show that the employer regarded him as having a disability that qualified under the ADA.  Stewart, 86 F.3d at 111.  Similarly, in Tockes v. Air-Land Transport Services, Inc., 343 F.3d 895, 896 (7th Cir. 2003), the defendant referred to the employee as "crippled," "disabled," and "handicapped."  The court explained that the words had a range of meaning that, and without more, did not show that the employer regarded the plaintiff as having a disability that fell within the restricted meaning of disabled under the ADA.  Tockes, 343 F.3d at 896.  Although the Army had determined that the plaintiff was 20 percent disabled, this did not mean that the employer found him so far disabled as to fall within the meaning of the ADA.  Tockes, 343 F.3d at 896. Both cases noted that the definition of disabled is restricted under the ADA, and absent proof that the employer regarded the employee as disabled within its limited definition, the employee could not make out a prima facie case.  Stewart, 86 F.3d at 111; Tockes, 343 F.3d at 896.

Similarly, Gomez's statement that Mayweather was "mental" may have more than one meaning and does not, without more, show that the defendant regarded Mayweather as having a mental disease severe enough to qualify as disabled under the ADA.  The ADA restricts the meaning of disabled to a specific subset of mental impairments, including "mental retardation, organic brain syn-

13

drome, emotional or mental illness, and specific learning disabilities." 41 C.F.R. §60-741.2 (o)(1)-(2). Although Local 743 may have believed that Mayweather had some psychological impairment, there is nothing to show that Local 743 considered Mayweather's impairment to rise to the level of having a mental disability as defined by the ADA. Furthermore, an employer may require an employee to undergo tests and treatments without regarding him as being disabled. See Stewart, 86 F.3d at 111. Here, it would be even more attenuated to conclude that Local 743 regarded Mayweather as having a disability based on its order to receive counseling. Mayweather previously requested mental counseling in his grievance, and Local 743 did not order the counseling on its own observations. Without more proof, Mayweather has failed to make a prima facie showing that he was regarded as disabled as defined by the ADA.

Additionally, Mayweather has not submitted any evidence, either direct or indirect under the McDonnell-Douglas burden shifting method, to show that he was discriminated against on account of his disability or that Local 743 failed to accommodate his impairment. Although Mayweather asserts that the union took other grievances to arbitration, the record does not show that these grievances were based on disabilities, nor does it explain what disabilities these individuals complained of. Absent evi-

14

dence suggesting that these individuals were similarly situated,
Mayweather cannot meet his burden of proof to establish a prima
facie case that he was discriminated against on the basis of his
disability.  See Hoffman, 256 F.3d at 572 (listing the elements
that the plaintiff must establish to make out a prima facie case
of discrimination under the indirect method of proof).  Nor does
Mayweather show that he had a disability that satisfied the
limited definition of the ADA and that Local 743 failed to
accommodate it.  Mayweather's submissions assert quite the
opposite – that he was not disabled.  Even if Local 743 regarded
Mayweather as disabled, which it did not, the record does not
reflect that Mayweather would have been qualified to remain
employed with the aid of reasonable accommodations, or what
reasonable accommodations should have been made.  See Elkstrand,
583 F.3d at 975 (explaining that the plaintiff must prove that he
is a qualified disabled individual).  For these reasons, May-
weather failed to establish a prima facie case under the ADA and
Local 743's motion is GRANTED on this issue.

Mayweather next asserts that Local 743 came to the aid of
white women and took their grievances to arbitration.  To the
extent that Mayweather is asserting a claim that he was subject
to race or gender discrimination, his claim falls under Title 42
U.S.C. §2000e-5 and 42 U.S.C. §1981.  Title 42 U.S.C. §20003-

15

5(e)(1) provides that a charge of discrimination must be filed within 300 days of the discriminatory employment practice in states that have a state agency authorized to mandate relief when a violation is found, or within 180 days otherwise. An unlawful practice is said to have occurred on the date of the discrete act that caused the loss that led to the party filing a charge with the EEOC. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110-11, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Mayweather did not allege that the defendant violated Title VII when he filed his charge of discrimination with the EEOC. The 300 day window for filing a charge of discrimination has passed, rendering any claims Mayweather desires to raise under Title VII untimely. However, §1981 imposes no such time restraint, nor does it require the injured party to first exhaust his administrative remedies. See Fane v. Locke Reynolds, LLP, 480 F.3d 534, 538 (7th Cir. 2007) ("Whether Fane exhausted her Title VII claims is immaterial, however, because Fane also sued under §1981"); Tyson v. Gannett Co., Inc., 538 F.3d 781, 783 (7th Cir. 2008) ("[T]he filing of a discrimination charge is not a prerequisite to pursuing that claim in court."). Therefore, Mayweather may have a viable claim for race discrimination under §1981.

Section 1981 provides:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State . . . to make and enforce con-
> tracts . . . as is enjoyed by white citizens
> [and this right includes] the making, perfor-
> mance, modification, and termination of con-
> tracts, and the enjoyment of all benefits,
> privileges, terms, and conditions of the
> contractual relationship.

> 42 U.S.C. §1981(a)-(b), as amended by the
> Civil Rights Act of 1991

In a Section 1981 case, a plaintiff can prove discrimination by direct evidence of discriminatory intent, or where no direct evidence exists, by using the indirect-burden shifting method established in McDonnell Douglas, 411 U.S. at 802-805, 93 S.Ct. at 1824-25, and refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981); Williams v. Waste Management of Illinois, 361 F.3d 1021, 1034 (7th Cir. 2004); Dandy v. United Parcel Service, Inc., 388 F.3d 263, 272 (7th Cir. 2004). Under the direct method, the plaintiff "must show either 'an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination.'" See Dandy, 388 F.3d at 272 (quoting Gorence v. Eagle Food Centers, 242 F.3d 759, 762 (7th Cir. 2001)); Rhodes v. Illinois Department of Transportation, 359 F.3d 498, 504 (7th Cir. 2004); Adams v.

Wal-Mart Stores, Inc., 324 F.3d 935, 938-39 (7th Cir. 2003).

Circumstantial evidence, by contrast, must create a "convincing

mosaic" that "allows the jury to infer intentional discrimination

by the decision maker" and points directly to a discriminatory

reason for the employment decision.  Rhodes, 359 F.3d at 504

(quoting Troupe v. May Department Stores Company, 20 F.3d 734,

737 (7th Cir. 1994)); Adams, 324 F.3d at 939.

The most general statement of the McDonnell Douglas method

of proof is that the plaintiff has the initial burden of showing

that: 1) he belongs to a protected group; 2) he was performing to

the employer's legitimate expectations; 3) he suffered an adverse

employment decision; and 4) the employer treated similarly

situated employees who are not in the protected group more favor-

ably.  Davis v. Con-Way Transportation Central Express, Inc., 368

F.3d 776, 788 (7th Cir. 2004); Wells v. Unisource Worldwide,

Inc., 289 F.3d 1001, 1006 (7th Cir. 2002).  This framework is

flexible and may be adapted to fit each case.  Burdine, 450 U.S.

at 253 n.6, 101 S.Ct. at 1094 n.6; Wohl v. Spectrum Manufactur-

ing, Inc., 94 F.3d 353, 359 (7th Cir. 1996).

Once the plaintiff has met this initial burden, the burden

shifts to the defendant who must "articulate a legitimate, non-

discriminatory reason for its actions." Herron v. DaimlerChrysler

Corporation, 388 F.3d 293, 299 (7th Cir. 2004); Johnson v. Cam-

bridge Industries, Inc., 325 F.3d 892, 897 (7th Cir. 2003). The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessment." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). See also Reeves, 530 U.S. at 142, 120 S.Ct. at 2106.

The burden then shifts back onto the plaintiff to show by a preponderance of the evidence that the reason given by the defendant was just a pretext for discrimination. See Jordan v. City of Gary, 396 F.3d 825, 834 (7th Cir. 2005); Volvosek v. Wisconsin Department of Agriculture, Trade and Consumer Protection, 344 F.3d 680, 692 (7th Cir. 2003); Peters v. Renaissance Hotel Operating Company, 307 F.3d 535, 545 (7th Cir. 2002). The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." Crim v. Board of Education of Cairo School District No. 1, 147 F.3d 535, 541 (7th Cir. 1998). See also Rummery v. Illinois Bell Telephone Company, 250 F.3d 553, 557 (7th Cir. 2001). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. Lesch v. Crown Cork & Seal Company, 282 F.3d 467, 473 (7th Cir. 2002). See also Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 574-576 (7th Cir. 2003). The trier of fact still may consider the evidence establishing a plaintiff's prima facie case

and inferences properly drawn therefrom on the issue of whether a defendant's explanation is pretextual. Reeves, 530 U.S. at 143, 120 S.Ct. 2106.

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff. St. Mary's Honor Center, 509 U.S. at 507, 113 S.Ct. at 2747; Burdine, 450 U.S. at 254, 101 S.Ct. at 1094; Johnson, 325 F.3d at 897. A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion. In Anderson v. Baxter Healthcare Corp., 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both McDonnell Douglas and [St. Mary's Honor Center v. Hicks, 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.
>
> 13 F.3d at 1124 (quoting Shager v. Upjohn, 913 F.2d 398, 401 (7th Cir. 1994))

See also O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002); Alexander v. Wisconsin Department of Health and Family Services, 263 F.3d 673, 683 (7th Cir. 2001) (stating that evidence that calls into question the truthfulness of the em-

ployer precludes summary judgment).  If the plaintiff is unable to meet his burden, his claims must fail.

Mayweather did not present direct proof that he was discriminated against under §1981 and must proceed under the McDonnell-Douglas burden shifting method.  Mayweather submits that he is a member of a protected group, black, and suffered an adverse employment action.  However, Mayweather's claim fails under the second and fourth prongs of the McDonnell-Douglas analysis.  Mayweather has not submitted any evidence that he was performing at his employer's legitimate expectations, nor has he made such an allegation.  Furthermore, the record is devoid of any evidence that similarly situated employees who were not in the protected group were treated more favorably.  Although Mayweather asserts that white women's grievances were taken to arbitration and his was not, he has not submitted proof of the contents of their claims.  Without this information, the court cannot judge whether the white women were similarly situated.  There are a number of reasons why the union may have taken the white women's claims to arbitration and not Mayweather's.  Their claims may have been more concrete or founded in fact.  Because Mayweather bears the burden of showing that similarly situated individuals not in the protected class were treated more favorably, and Mayweather has not submitted proof that the women whose claims that were taken

to arbitration were similarly situated, he cannot make out a prima facie case. Therefore, summary judgment is GRANTED in favor of Local 743 on this issue.

Finally, Mayweather alleges that Local 743 breached its duty of fair representation. Mayweather incorrectly states that this claim is governed by the National Labor Relations Act. "The theory of the [National Labor Relations] Act is that the making of voluntary labor agreements is encouraged by protecting employees' rights to organize for collective bargaining and by imposing on labor and management the mutual obligation to bargain collectively." N.L.R.B. v. American Nat. Ins. Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952). Mayweather does not claim that Munster Med Inn breached the collective bargaining agreement. Rather, his claim is that the union breached its duty to represent him fairly in resolving a dispute with his employer, and this should be evaluated under the Labor Management Relations Act, 29 U.S.C. §185. See International Union of Operating Engineers, Local 150 AFL CIO v. Hobart Crane Rental, Inc., 2007 WL 2114284 (N.D. Ind. July 19, 2007) (stating that 29 U.S.C. §185 provides federal courts with jurisdiction over contract disputes between an employer and labor organization); Hart v. Transit Management of Racine, Inc., 426 F.3d 863, 867 (7th Cir. 2005) (overruled on other grounds)(finding that a hybrid claim under

the LMRA and NLRA arises when the employer breaches a collective bargaining agreement and the aggrieved employee's union breaches its duty to fairly represent the employee in a dispute with his employer). Regardless of which Act governs Mayweather's claim, he was required to file his complaint with the proper court within six months of the events giving rise to his claim. 29 U.S.C. §160(b); DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 154 n.2, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Mayweather's employment with Munster Med Inn was terminated on May 7, 2008. He filed his Charge of Discrimination with the EEOC two days later on May 9, 2008. However, Mayweather did not file his complaint in this action until March 13, 2009, more than six months after the events giving rise to his claim. Therefore, Mayweather's claim is time barred and summary judgment is GRANTED in favor of the defendant.

————————————

Based on the foregoing, the Motion for Summary Judgment [DE 33] filed by the defendant, International Brotherhood of Teamsters Local 743, on June 4, 2010, is GRANTED.

ENTERED this 3rd day of March, 2011

                    s/ ANDREW P. RODOVICH
                      United States Magistrate Judge